1  SEDGWICK LLP
   REBECCA A. HULL  Bar No. 99802
2  rebecca.hull@sedgwicklaw.com
   MARK J. HANCOCK Bar No. 160662
3  mark.hancock@sedgwicklaw.com
   333 Bush Street, 30th Floor
4  San Francisco, CA  94104
   Telephone: (415) 781-7900
5  Facsimile: (415) 781-2635

6  Attorneys for Defendant
   METROPOLITAN LIFE INSURANCE COMPANY
7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11 | CATHY A. REYNOLDS 2008 REVOCABLE
   | TRUST; R.W. "SKIP" REYNOLDS,                  Case No.  2:12-cv-00417 JAM-DAD
12 | TRUSTEE OF CATHY A. REYNOLDS 2008
   | REVOCABLE TRUST; RHYS HOSKINS,
13 | Beneficiary of Cathy A. Reynolds 2008          [PROPOSED] ORDER GRANTING
   | Revocable Trust and heir of Cathy A. Reynolds, METLIFE'S MOTION FOR SUMMARY
14 | Decedent; MELORIA HOSKINS, Beneficiary         JUDGMENT
   | of Cathy A. Reynolds 2008 Revocable Trust
15 | and heir of Cathy A. Reynolds, Decedent;
   | ESTATE OF CATHY A. REYNOLDS; R. W.
16 | "SKIP" REYNOLDS as Executor of the Estate
   | of Cathy A. Reynolds; and R. W. "SKIP"
17 | REYNOLDS as Conservator of the Estate of
   | Cathy A. Reynolds,
18 |
   |             Plaintiffs,
19 |
   |     v.
20 |
   | MET LIFE; METROPOLITAN LIFE
21 | INSURANCE COMPANY, and DOES 1
   | to 150, inclusive,
22 |
   |             Defendants.
23

24
25
26
27
28

19974667v1

The motion of Metropolitan Life Insurance Company ("MetLife") for Summary Judgment, or in The Alternative, for Summary Adjudication to Establish ERISA Jurisdiction came on regularly for hearing before this Court on February 25, 2015, and Mark Hancock appeared as attorney for MetLife and Daniel Glass and Steven Heller appeared as attorneys for plaintiffs.

After considering the moving and opposition papers, arguments of counsel, and all other matters presented to the Court, and for the reasons set forth in the Transcript of Proceedings, pages 26 through 36, attached hereto as Exhibit A, IT IS HEREBY ORDERED THAT the motion for Summary Judgment is GRANTED.

DATED: March 9, 2015

_____
United States District Judge

# Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

---oOo---

BEFORE THE HONORABLE JOHN A. MENDEZ, JUDGE

---oOo---

CATHY A. REYNOLDS 2008 REVOCABLE
TRUST; R.W. "SKIP" REYNOLDS,
TRUSTEE OF CATHY A. REYNOLDS 2008
REVOCABLE TRUST; RHYS HOSKINS,
Beneficiary of Cathy A. Reynolds
2008 Revocable Trust and heir of
Cathy A. Reynolds, Decedent;
MELORIA HOSKINS, Beneficiary of
Cathy A. Reynolds 2008 Revocable
Trust and heir of Cathy A. Reynolds,
Decedent; ESTATE OF CATHY A. REYNOLDS;
R.W. "SKIP" REYNOLDS as Executor of
the Estate of Cathy A. Reynolds; and
R.W. "SKIP" REYNOLDS as Conservator
of the Estate of Cathy A. Reynolds,

        Plaintiffs,

vs.                                                      No. Civ. S-12-0417

METROPOLITAN LIFE INSURANCE
COMPANY,

        Defendants.
_____/

---oOo---

REPORTER'S TRANSCRIPT OF PROCEEDINGS

MOTION HEARING

WEDNESDAY, FEBRUARY 25, 2015

---oOo---

Reported by:    KATHY L. SWINHART, CSR #10150

26

1  application, as I said, reminding her that, at least under the
2  plan, there's a single payment provision. That couldn't be
3  clearer. As to whether the insurance company is legally
4  obligated to do that and whether they should do that are two
5  different issues.
6       Okay. I'll be back in about five minutes.
7       MR. GLASS: Thank you, Your Honor.
8       MR. HELLER: Thank you.
9       (Recess taken.)
10      THE CLERK: Court is again in session.
11      THE COURT: All right. Back on the record.
12      The matter having been submitted to the Court, the
13  Court is prepared to rule as follows:
14      The issue in the case is whether the Court should
15  grant defendant MetLife's motion for summary judgment on the
16  grounds that, as MetLife argues, ERISA does apply, and that
17  plaintiffs' recovery is barred by the plan terms of the ERISA
18  plan.
19      The Court does find that MetLife is in this case
20  entitled to summary judgment. The Court finds that
21  plaintiffs' claims do relate to an ERISA plan within the
22  meaning of the statute, and that plaintiffs' claims revolve
23  around the right to conversion under plaintiffs' group ERISA
24  plan, and the claims do not solely arise under the converted
25  policy itself.

1       As plaintiffs' recovery is barred by the clear
2  language of the plan, the one payment only provision in the
3  group ERISA plan, the Court further finds, as I'll explain,
4  that the administrator's determination was reasonable.
5       The facts are well known to the parties. The Court's
6  not going to repeat all the facts. We've gone over them
7  during the oral argument portion of this matter.
8       With respect to the issue of the applicability of
9  ERISA, the defendant has argued that this matter, including
10 the plaintiffs' asserted right to recover under both the group
11 policy and the personal policy, is governed by ERISA.
12 Specifically defendant has argued that ERISA preempts
13 plaintiffs' state law claims, and the plain terms of the group
14 plan preclude plaintiffs' claim for benefits under the
15 personal policy, the whole life policy.
16      Plaintiffs have responded in their opposition that the
17 personal policy is a stand-alone, fully self-contained
18 personal, individual whole life policy which is not governed
19 by ERISA or the terms of the group plan.
20      The ERISA preemption provision states that it shall
21 supersede any and all state laws insofar as they may now or
22 hereinafter relate to any employee benefit plan. That's ERISA
23 Section 514(a) as amended. It's 29 U.S.C. Section 1144(a).
24      ERISA's preemption clause is deliberately expansive
25 and contains one of the broadest preemption clauses every

1    enacted by Congress. However, the Supreme Court has
2    admonished that the term "relate to" is to be read practically
3    with an eye toward the action's actual relationship to the
4    subject plan.
5         It is well established that the state law claims
6    brought by the plaintiffs are preempted by ERISA if they
7    relate to the application or administration of an ERISA plan.
8    That's the Supreme Court case of Pilot Life Insurance Company
9    versus Dedeaux, D-E-D-E-A-U-X, a 1987 Supreme Court case.
10        While the Ninth Circuit has never directly addressed
11   the specific issue presented here, that is, whether a state
12   law claim for recovery under an individual conversion policy
13   is preempted when the originating ERISA group plan precludes
14   recovery under a single payment provision, both in and out of
15   circuit cases are instructive on this issue.
16        The Court has reviewed carefully the Waks versus
17   Empire Blue Cross Blue Shield case cited by the parties in the
18   briefs as well as the cases cited therein, including I think
19   it's pronounced Tingey, T-I-N-G-E-Y, versus Pixley-Richards
20   West, Inc. But the most persuasive, however -- even though
21   it's an out of circuit case, it seems to be the most factually
22   analogous case -- is the Fourth Circuit case in White versus
23   Provident Life and Accidental Insurance Company, 114 F.3d 26,
24   a Fourth Circuit 1997 case.
25        In that case, the plaintiff became entitled to

1   continuous life coverage under his group policy due to a total
2   disability. There was an error when he was issued an
3   individual conversion policy. But as in the case before the
4   Court today, in the White case, the group policy prohibited
5   double recovery through a single payment clause. And prior to
6   Mr. White's death, the insurance company realized that it made
7   a mistake and requested that Mr. White return the individual
8   policy and promised to refund the paid premiums. Mr. White
9   refused. He filed a lawsuit in state court seeking
10  declaratory judgment that he was entitled to benefits under
11  both the group and individual policies.
12          The Fourth Circuit did affirm the district court's
13  grant of summary judgment in favor of the defendant insurance
14  company. The Fourth Circuit reasoned that since White's
15  claims are clearly related to the conditions placed by the
16  group policy on the right of conversion, his claims must be
17  governed by ERISA.
18          Quoting the single payment provision in the group
19  plan, the Fourth Circuit court noted that the written terms of
20  the ERISA plan plainly prohibit simultaneous recovery under
21  the group policy and a conversion policy, and ERISA demands
22  adherence to the clear language of this employee benefit plan.
23          Although that White case is not binding on this court,
24  the Fourth Circuit's reasoning in White is sound, and it is
25  consistent with the bifurcated framework developed by the

Ninth Circuit in Waks.

Ms. Reynolds' claim for payment under the personal policy is based on the right to convert from an ERISA plan to an individual policy. Contrary to plaintiffs' argument, however, her claims, Ms. Reynolds' claims do not arise solely from the terms of the personal policy such that the claims are based on rights provided by a policy that had already been converted, as was the situation in Waks.

The plaintiffs have not claimed that MetLife failed to pay benefits due to an improper exclusion in the personal plan; for example, a preexisting condition or a finding of suicide that rendered her ineligible. Rather, the denial of payments in this case is based on the single payment condition that's contained in the group plan. That single payment condition limits and qualifies the right to conversion in that recovery under the converted policy is precluded by recovery under the group policy.

Simply put, plaintiffs' claims require the interpretation and application of the terms of an ERISA plan, and their claims therefore, the Court finds, relate to an employee benefit plan within the scope of the ERISA preemption clause.

Plaintiffs have attempted to distinguish White. As I indicated, plaintiffs noted two factual differences between White and the present case, first, the fact that the plaintiff

in White may have made factual misrepresentations to the insurer in obtaining the individual policy and, two, the fact that the insurer in White attempted to rescind the policy prior to the death of the insured. The Court finds that neither of those facts appear to be necessary to the holding in White, and they are not relevant to the Court's analysis. The Fourth Circuit did not rely upon the misrepresentations made by the plaintiff, nor upon the fact that the policy had not vested at the time of the attempted rescission.

Plaintiffs have attempted, in this case before the Court, to frame the personal policy as a stand-alone, fully self-contained personal, individual whole life policy. The Court is not persuaded by that argument. Plaintiffs argue that nowhere in the personal policy does it state or even imply that it could be rescinded. And similarly plaintiffs argue that the personal policy does not reference a group policy.

The Court believes that the record submitted in support of the motion, the administrative record and documents prove otherwise.

The personal policy expressly provides that this policy includes any riders and with the application attached when the policy is issued makes up the entire contract. Again, that's at the administrative record at 298 attached to the Box declaration. Thus, the application is part of the

1   contract.

2       The application contains two express references to the
3   group policy.  In Section 6 of the application, the box for
4   group conversion is marked in the affirmative; that's
5   administration record 307.  And the group conversion
6   supplement, which was part of the application and signed by
7   Ms. Reynolds, also contains several references to the group
8   policy.  That's in the Williams declaration, the agent
9   documents at 120.

10      The box next to corporate group is marked, and the
11  group policy I.D. number, which is 100181, is in fact written
12  in next to the group policy number on the supplement.

13      By referencing the group policy, which was a benefit
14  of the group plan, the application for the personal policy
15  necessarily includes the one payment only provision included
16  in the group plan.  Thus, the personal policy on its face is
17  not a stand-alone, fully self-contained personal, individual
18  policy, but rather contains repeated references to the group
19  policy.

20      Plaintiffs do discuss and attempt to distinguish three
21  Ninth Circuit cases cited by the defendant -- Tingey, Greany
22  and Qualls.  Plaintiffs' examination of these cases confirms
23  the bifurcated framework laid out by the Ninth Circuit in
24  Waks, and plaintiffs are correct that these cases distinguish
25  between rights under a converted policy and the right of

1  conversion as discussed in Waks. The Court finds that
2  plaintiffs' arguments that the present case falls into the
3  Waks situation, rather than the White category, is
4  unpersuasive as I've indicated.
5          Then finally plaintiffs' argument that the acceptance
6  of premiums under the personal policy constitutes a waiver of
7  the single payment provision in the group plan or requires an
8  application of the equitable doctrine of estoppel carries
9  little weight in the ERISA context. The acceptance of
10 premiums cannot constitute a waiver of a term in an ERISA plan
11 to the extent that it would be in direct conflict with the
12 plain written terms of the plan. That's the Yale versus Sun
13 Life Assurance Company of Canada case, a 2013 Eastern District
14 of California case. To allow such a waiver would violate the
15 statute itself, which does not provide for such unwritten
16 modifications of ERISA plans. The Court also would cite the
17 parties to Crull, C-R-U-L-L, versus GEM Insurance Company, a
18 1995 Ninth Circuit case.
19         Similarly, the doctrine of estoppel cannot be invoked
20 unless the applicable terms of the ERISA plan are ambiguous.
21 That's the Greany versus West Farm Bureau Life Insurance
22 Company case, a 1992 Ninth Circuit case. Given the
23 unambiguous nature of the one payment only provision of the
24 group plan, neither waiver nor estoppel is a viable argument
25 here. Accordingly, any factual dispute as to what oral

representations were made to plaintiffs by MetLife agents does not preclude summary judgment.

Then finally there's the issue of the review of the administrator's determination. When an ERISA plan does confer discretion, an abuse of discretion review applies. It is undisputed that the group plan broadly confers discretion upon MetLife to interpret the terms of the plan and to determine eligibility for an entitlement to plan benefits in accordance with the terms of the plan. Thus, in applying a deferential standard of review, the plan administrator's interpretation of the plan will not be disturbed if reasonable.

To the extent that plaintiffs argue that MetLife is not entitled to a deferential standard of review because it failed to follow the proper ERISA procedures, again, the Court does not find that argument to be persuasive.

It is true that MetLife did not issue a denial letter and did not provide an opportunity to appeal. However, as the defendants argue, that is because the ERISA claim was not denied. Rather, MetLife paid out $497,000 in benefits under the ERISA group policy. The failure to pay out additional benefits on the personal policy was not a denial, but rather an application of the one payment only provision in the group plan. Despite the limited payment, MetLife's determination was not a denial, but rather a payment on the ERISA claim.

Regardless, under either a deferential abuse of

1  discretion standard or under a de novo standard of review, the
2  decision of MetLife is upheld and as a matter of law should be
3  upheld.  MetLife applied the plain terms of the group plan,
4  the group policy and the personal policy.  It complied with
5  the terms of the one payment only provision by paying out the
6  $497,000 under the group policy, refunding the paid premiums
7  with interest on the policies, including interest on the
8  premiums.  Because the group plan administrator did not abuse
9  its discretion, and because there are no genuine issues of
10 material fact, the defendant's motion for summary judgment is
11 granted in its entirety.
12       If you want a written order, you may submit one
13 consistent with what the Court has indicated today.  The
14 simplest way to do that probably is to order a transcript and
15 attach a copy of the transcript.  If you don't want a written
16 order of some type that's on the docket, that's fine.  The
17 Court's order here today will stand.
18       Okay?
19       MR. GLASS:  One question, Your Honor.
20       MR. HANCOCK:  Thank you, Your Honor.
21       MR. GLASS:  May plaintiff have leave to try and state
22 an ERISA claim now that you have stated that this is subject
23 to ERISA?
24       THE COURT:  I don't give legal advice.
25       MR. HANCOCK:  Thank you, Your Honor.

36

1    THE COURT: All right.

2    MR. HELLER: Thank you, Your Honor.

3        (Proceedings were concluded at 11:29 a.m.)

4                    ---o0o---

```
1      I certify that the foregoing is a correct transcript
2    from the record of proceedings in the above-entitled matter.
3
4
                              /s/ Kathy L. Swinhart
5                             KATHY L. SWINHART, CSR #10150
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```